EFiled: Aug 31 2015 12:38PM EDT
Transaction ID 57791626
Case No. 10152-VCN

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

August 31, 2015

Edmond D. Johnson, Esquire
James G. McMillan, III, Esquire
Pepper Hamilton LLP
1313 North Market Street
Wilmington, DE 19801

Gregory E. Stuhlman, Esquire
E. Chaney Hall, Esquire
Greenberg Traurig, LLP
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Re: *Lieberman v. Electrolytic Ozone, Inc.*
C.A. No. 10152-VCN
Date Submitted: May 11, 2015

Dear Counsel:

Plaintiffs Wayne Lieberman ("Lieberman") and Carl Lutz ("Lutz," and with Lieberman, the "Plaintiffs") are former officers of Defendant Electrolytic Ozone, Inc. ("EOI"). EOI is currently engaged in arbitration (the "Arbitration") with Plaintiffs' current employer, Franke Foodservice Systems, Inc. ("Franke"). In the Arbitration, EOI has asserted third-party breach of contract claims against Plaintiffs. Plaintiffs seek an order requiring EOI to advance their legal expenses incurred in defending those claims.

## I. BACKGROUND

A. *The Arbitration*

Plaintiffs were employed as executive officers of EOI until December 2013. Lieberman was CEO and a director; Lutz served as Vice President of Engineering. In connection with their employment, each separately entered into an At-Will Employment, Proprietary Information, Invention Assignment and Non-Solicit and Non-Compete Agreement (the "PIIA Agreements").[1]

In 2011, EOI entered into a supply agreement with Franke (the "Supply Agreement"), whereby EOI contracted to provide Franke a certain product and an exclusive license to some intellectual property. In summer 2013, with eight years remaining on the Supply Agreement, EOI informed Franke that it would be discontinuing its operations. EOI terminated Plaintiffs in December 2013 because by that time, the company had mostly ceased operations at the plant where they worked. Plaintiffs, who had become familiar with Franke during their tenures at EOI, began working for Franke in February 2014.

---

[1] *See* App. to Pls.' Opening Br. on Their Mot. for Summ. J. A40-A54.

By then, Franke had commenced the Arbitration against EOI, alleging breach of the Supply Agreement and repudiation of contract. In June 2014, EOI brought counterclaims against Franke and third-party claims against Plaintiffs. EOI's claims against Plaintiffs are:

(a) breach of contract under the PIIA Agreements for failing to return EOI property and proprietary information;

(b) breach of contract under the PIIA Agreements for failing to comply with post-termination obligations, including failure to provide required disclosures and certifications of compliance; and

(c) anticipatory repudiation and/or breach of contract under the PIIA Agreements in connection with, without limitation, the repudiation of their obligations under the Non-Compete and Non-Solicitation provisions of the PIIA Agreements.[2]

B. *EOI's Obligation to Advance Plaintiffs' Expenses*

EOI's corporate documents provide for advancement and indemnification to the full extent allowed by Delaware law.[3] Plaintiffs each entered into an indemnity agreement (the "Indemnity Agreements") with EOI, and the company agreed to compensate them for expenses incurred in proceedings by or in the right of EOI:

---

[2] Compl. Ex. A ("Arbitration") at 7.
[3] Compl. ¶¶ 25-26.

The Company shall indemnify Indemnitee if Indemnitee was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Company . . . to procure a judgment in its favor *by reason of the fact that Indemnitee is or was a director, officer, employee or agent of the Company* . . . against expenses (including attorneys' fees) . . . .[4]

The Indemnity Agreements also provide for advancement of expenses:

The Company shall advance all expenses incurred by Indemnitee in connection with the investigation, defense, settlement or appeal of any civil or criminal action, suit or proceeding referenced in [the Indemnification provisions] hereof (but not amounts actually paid in settlement of any such action, suit or proceeding). Indemnitee hereby undertakes to repay such amounts advanced only if, and to the extent that, it shall ultimately be determined that Indemnitee is not entitled to be indemnified by the Company as authorized hereby. The advances to be made hereunder shall be paid by the Company to the Indemnitee within thirty (30) days following delivery of a written request therefore by Indemnitee to the Company.[5]

C. *Current Proceedings*

Plaintiffs made written requests for advancement to EOI on July 23, 2014.[6]

EOI rejected those demands, denying its obligation to advance expenses in

---

[4] Compl. Ex. B ("Indemnity Agmts.") § 1(b) (emphasis added).
[5] Indemnity Agmts. § 2(a).
[6] Compl. Ex. C.

connection with its Arbitration claims.[7]  Plaintiffs subsequently filed this action seeking an order compelling advancement.  Both sides have moved for summary judgment, and this is the Court's decision on those cross-motions.

## II.  ANALYSIS

Cross-motions for summary judgment are governed by Court of Chancery Rule 56.[8]  For either party to prevail, it must demonstrate the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law.[9] When there are no issues of material fact relating to either motion, the Court treats the cross-motions as the equivalent of a stipulation for decision on the merits based on the submitted record.[10]  In that case, "the usual standard of drawing inferences in favor of the nonmoving party does not apply."[11]

Nonetheless, by filing its motion, each party "does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the

---

[7] Compl. Ex. D.
[8] *Levy v. HLI Operating Co., Inc.*, 924 A.2d 210, 219 (Del. Ch. 2007).
[9] *Id.*
[10] *Farmers for Fairness v. Kent Cnty.*, 940 A.2d 947, 955 (Del. Ch. 2008).
[11] *Id.*

other party."[12] Under those circumstances, the Court views the evidence in the light most favorable to the nonmoving party.[13] If a material factual issue exists, then summary judgment will be denied.[14] Both parties' motions may be denied if genuine issues of material fact necessitate that result.[15]

A. *Are Plaintiffs Entitled to Advancement?*

Sections 145(a) and (b) of the Delaware General Corporation Law permit corporations to indemnify current and former corporate officials for expenses incurred in legal proceedings "by reason of the fact that the person is or was a director, officer, employee or agent of the corporation."[16] Section 145(e) allows corporations to advance the costs of defending against covered proceedings. EOI's corporate documents provide for mandatory advancement and indemnification

---

[12] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

[13] *Levy*, 924 A.2d at 219.

[14] *Id.*

[15] *Cont'l Airlines Corp. v. Am. Gen. Corp.*, 575 A.2d 1160, 1170 (Del. 1990). EOI raises factual issues regarding Plaintiffs' standing. *Infra* note 17. Those issues are immaterial here, and the Court treats the motions as presenting "the equivalent of a stipulation for decision on the merits based on the record submitted with the motions." *See* Ct. Ch. R. 56(h).

[16] 8 *Del. C.* § 145(a)-(b).

when current or former directors, officers, or employees are forced to defend against claims asserted against them "by reason of the fact" that they hold (or held) their position with the company.

### 1. The "By Reason of the Fact" Standard

Whether Plaintiffs are entitled to advancement depends on whether EOI's Arbitration claims are brought "by reason of the fact" that Plaintiffs served as EOI directors, officers, or employees.[17] The "by reason of the fact" test requires "a

---

[17] EOI challenges Plaintiffs' standing based on Lieberman's deposition testimony and testimony in the Arbitration proceedings indicating that Franke has been advancing their legal fees and costs in connection with the Arbitration. EOI argues that Plaintiffs have not and will not suffer any related out-of-pocket loss. While there potentially is a factual issue regarding the nature of Franke's commitment, it is immaterial to resolution of the cross-motions.

Even if Franke were currently complying with a mandatory advancement obligation, Plaintiffs "ha[ve] standing to pursue, at a minimum, advancement from EOI for the [Arbitration] expenses [they have] incurred and will incur in the [Arbitration] and for which [they have] not already received advancement from [Franke] . . . ." *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1045 (Del. Ch. 2014). When a party has a contractual right to advancement from two different sources, one obligor's refusal to honor its obligations presents an injury-in-fact that confers standing, regardless of the party's ability to request and receive mandatory advancement from the other source. *Id.* Whether Franke is obligated to pay advancement (or only indemnification), and whether any advancement would be mandatory or permissive, need not be resolved here because Plaintiffs are not entitled to the advancement they seek in this action.

nexus or causal connection between any of the underlying proceedings . . . and [Plaintiffs'] official corporate capacit[ies]."[18] This connection "is established if the corporate powers were used or necessary for the commission of the alleged misconduct."[19]

Although Section 145's "by reason of the fact" requirement is construed broadly, it does not cover every suit brought against a director, officer, or employee.[20] "Section 145 will not apply when the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation."[21] Thus, advancement will be denied when the underlying claims "are in the nature of an employment dispute, based on a personal obligation owed to the corporation . . .

---

[18] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005).

[19] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007).

[20] *See Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *3 (Del. Ch. Jan. 30, 2004).

[21] *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 403 (Del. Ch. 2009).

[and the employee] did not need to make use of any 'entrusted corporate powers' in order to engage in the conduct that gave rise to the specific claims . . . ."[22]

"When a corporate officer signs an employment contract committing to fill an office, he is acting in a personal capacity in an adversarial, arms-length transaction. To the extent that he binds himself to certain obligations under the contract, he owes a personal obligation to the corporation."[23] However, the Court will not be blinded by pleading formalism when the underlying claims, although stated as breaches of contract, rest on alleged misconduct that is identical to tort claims that the company asserts, or could bring.[24] When contractual claims are premised "entirely on allegedly improper actions taken by [an employee] in his

---

[22] *Weaver*, 2004 WL 243163, at * 3. Plaintiffs are provided advancement rights not only by reason of the fact that they were officers, but also by reason of the fact that they were employees. Even in the employee advancement context, Plaintiffs construe their entitlement too broadly. *See infra* note 43.

[23] *Cochran v. Stifel Fin. Corp.*, 2000 WL 1847676, at *6 (Del. Ch. Dec. 13, 2000), *aff'd in part, rev'd in part*, 809 A.2d 555 (Del. 2002).

[24] *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *8 (Del. Ch. June 18, 2002).

official capacity," a company cannot avoid an advancement obligation by basing its refusal solely on the employee's alleged breach of a personal contract.[25]

> In *Reddy v. Electronic Data Systems Corp.*,

> the actions that [the employee] supposedly took in breach of his contractual obligations—falsifying and manipulating the books and records of [the company]—[were] identical to the tort claims the company . . . asserted. Put another way, [the company admitted] that [the employee's] alleged contractual breaches consist[ed] of his failing to have lived up to the implied covenant in his contracts that he would not engage in official misconduct to generate false financials, thereby generating improper payments under the contracts.[26]

The Court ordered advancement, understandably hesitant to allow a company to "argue that the employee's improper on-the-job acts were simply breaches of an implied covenant to serve the corporation faithfully and honestly, and that the contractual claims against her did not implicate her right to advancement."[27] Essentially, when success on a breach of contract claim and a

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

fiduciary duty claim would be based on the same set of facts, the Court will look through creative pleading.[28]

### 2. EOI's Arbitration Claims Are Not "By Reason of the Fact" that Plaintiffs Were Officers, Directors, or Employees

On their face, EOI's Arbitration claims charge Plaintiffs with breaching personal obligations owed under the PIIA Agreements.[29] These allegations revolve around Plaintiffs' personal contractual relationships with EOI and do not exist "by reason of the fact" that Plaintiffs were EOI officers, directors, or employees.[30]

---

[28] *See id.* at *6.

> Because [the company] did not specifically allege that [the employee] had committed a breach of fiduciary duty, it claims that the [the underlying claims are] not a proper subject of advancement. But, the negligence, gross negligence, common law fraud, and contract claims brought against [the employee] all could be seen as fiduciary allegations, involving as they do the charge that a senior managerial employee failed to live up to his duties of loyalty and care to the corporation. Most critically, all of the misconduct alleged by [the company] involves actions [the employee] took on the job in the course of performing his day-to-day managerial duties.

[29] *See supra* text accompanying note 2.

[30] Of course, had Plaintiffs never worked for EOI, EOI's claims would never have arisen. That causal connection does not meet the "by reason of the fact" standard. *See infra* note 43.

Each claim arises out of actions that Plaintiffs have taken after leaving EOI's employ in December 2013.

Importantly, EOI's contractual claims are not dependent on any alleged on-the-job misconduct. Rather, each claim is derived from specific contractual obligations, which Plaintiffs allegedly breached post-termination. Upon accepting employment with EOI, Plaintiffs each agreed:

> Upon termination of my employment, or at any time on the request of Company before termination, I will promptly (but no later than five (5) days after the earlier of my employment's termination or Company's request) destroy or deliver to Company, at Company's option, (a) all materials furnished to me by Company, (b) all tangible media of expression which are in my possession and which incorporate any Proprietary Information or otherwise relate to Company's business, and (c) written certification of my compliance with my obligations under this sentence. . . .[31]

The first Arbitration claim asserts "breach of contract under the PIIA Agreements for failing to return EOI property and proprietary information."[32]

The PIIA Agreements created additional post-termination duties:

> [U]pon termination of my employment for any reason, I shall immediately: (a) disclose all information related to Innovations not

---

[31] PIIA Agmts. § 5.

[32] Arbitration ¶ 19(a).

previously communicated to Company; (b) deliver to an authorized official of Company: (i) all Company property . . . and (ii) a written certification . . . confirming that I have made such disclosures and returned such property and Proprietary Information; and (c) certify in writing that all disclosures and certifications made to Company are and have been true and complete in all respects.[33]

The second Arbitration claim asserts "breach of contract under the PIIA Agreements for failing to comply with post-termination obligations, including failure to provide required disclosures and certifications of compliance."[34]

Plaintiffs also each agreed:

[W]hile I am employed by Company and for one (1) year thereafter . . . I shall not directly or indirectly own, manage, operate, control, finance or invest in, participate in, consult with, render services for, act as an officer, director, partner, principal, agent, representative, contractor or advisor of or to, or . . . be employed by or represent any Competitor anywhere within the world except with Company's prior written consent . . . .[35]

The third Arbitration claim alleges "anticipatory repudiation and/or breach of contract under the PIIA Agreements in connection with, without limitation, the repudiation of their obligations under the Non-Compete and Non-Solicitation

---

[33] PIIA Agmts. § 14.
[34] Arbitration ¶ 19(b).
[35] PIIA Agmts. § 13(b).

provisions of the PIIA Agreements."[36] Thus, each of EOI's Arbitration claims asserts post-termination breaches of individual obligations arising under the PIIA Agreements.

> Plaintiffs argue that
>
> EOI's claims in the Arbitration are based on the alleged misuse of confidential information that the Plaintiffs learned as officers and employees of EOI. Since Plaintiffs were provided the confidential information at issue in their capacities as officers and employees of EOI, EOI's contractual claims are grounded in Plaintiffs' alleged misuse of the substantial fiduciary responsibility that they were given in their capacities as employees, officers and/or directors of EOI.[37]

However, the misuse that EOI alleges stems from Plaintiffs' post-termination conduct. For example, Plaintiffs allegedly have failed to return proprietary information and have used it to benefit a competitor, in contravention of their contractual obligations.

The cases that Plaintiffs rely on are distinguishable. In *Brown v. LiveOps, Inc.*, "the [underlying] claims alleged against [the officer were] inextricably

---

[36] Arbitration ¶ 19(c).

[37] Pls.' Answering Br. on Def.'s Mot. for Summ. J. 12-13. This argument appears to convert the "by reason of the fact" test into a "but for" test in contravention of Delaware law. *See infra* note 43.

intertwined with his position as an officer and director of the company. . . ."[38]  The

Court determined that because "[t]he complaint explicitly allege[d] that [the former

officer] wrongly retained and copied the proprietary information" while he was

still employed by the company, the Court could not "reasonably conclude that the

allegations [were] strictly confined to . . . actions after his termination . . . ."[39]

"[C]orporate powers were used, and were necessary, for the commission of the

alleged misconduct."[40]  The underlying claims in *Brown* included allegations that

the former officer had knowingly and willfully conspired to breach his fiduciary

duties both during and after his employment with his former employer.[41]

In constrast, EOI's Arbitration claims are confined to post-termination

actions and do not depend on Plaintiffs' use of corporate authority or position.[42]  If

---

[38] 903 A.2d 324, 328 (Del. Ch. 2006).

[39] *Id.* at 329.

[40] *Id.*

[41] *Id.* at 326.

[42] The Arbitration pleadings do reference "indications that at least Mr. Lieberman downloaded material from his EOI computer on to portable devices and deleted emails from the EOI machine prior to his departure from EOI."  Arbitration ¶ 11. The circumstances surrounding these alleged actions are unclear; in a different context, they might form a nexus to Lieberman's EOI employment sufficient to satisfy the "by reason of the fact" standard.

EOI could have brought such claims in the Arbitration, it did not do so. Importantly, the claims it did bring could not merely be relabeled as claims that would warrant advancement. EOI could succeed on all of its claims based on a set of facts that would not support a finding of a fiduciary breach or an abuse of a corporate position. That EOI might theoretically have been able to bring other distinct claims does not justify advancement. Plaintiffs' conduct as EOI officers, directors, or employees is essentially immaterial to EOI's contractually-based Arbitration claims.[43] Because those claims arise solely from alleged post-

---

Here however, EOI apparently referenced those actions as support for its contention that Lieberman possesses certain EOI property that he is contractually obligated to return. In the Arbitration, EOI has not asserted any fiduciary claim, or any claim necessarily based on conduct that could have been pleaded as a fiduciary breach. Instead, it has asserted specific breach of contract claims.

[43] *Cf. Reddy*, 2002 WL 1358761, at *7 ("[T]he *Cochran* case[, where indemnification for certain breach of contract claims was denied,] . . . did [not] involve a situation in which the officer's alleged breach of his employment agreements was argued to be the identical conduct that was also averred to be a breach of fiduciary duty.").

EOI's Arbitration claims are not based on wrongful action taken by Plaintiffs while employed by EOI. EOI's alleged claims are based on post-termination actions. As noted, there is some suggestion that Lieberman may have downloaded some EOI information before leaving its employ, but there is no showing that it was wrongful or done for some ulterior purpose. This is not an instance where conduct inappropriate during employment continued in some fashion after

termination breaches of personal obligations under the PIIA Agreements, Plaintiffs

are not entitled to advancement.[44]

---

termination. The dispute is over what Plaintiffs did post-employment with information they properly and apparently necessarily learned while employed. The bases for the claims are in the PIAA Agreements. In short, perhaps the phrase "by reason of the fact" can be read literally to afford some support for Plaintiffs' position. However, the "by reason of the fact" standard "is not construed so broadly as to encompass every suit brought against an officer and director." *Weaver*, 2004 WL 243163, at *3. "For example, claims brought by a corporation against an officer for excessive compensation paid or breaches of a non-competition agreement . . . are not brought 'by reason of the fact' of the director's position with the corporation." *Id.* Although such claims would not be subject to advancement, they would never have arisen "but for" the officer's employment.

[44] On April 28, 2015, Plaintiffs submitted a letter to the Court, updating it on developments in the Arbitration. Apr. 28, 2015, Letter to the Court from Edmond D. Johnson, Esquire. Plaintiffs suggested that EOI's argument in the Arbitration supported their claims to advancement because EOI had left "no doubt that EOI presented a case against the former employees based upon their use of confidential information learned in their capacities as officer-employees of EOI for the benefit of their subsequent employer." *Id.* at 4.

Plaintiffs' letter does not alter the Court's analysis. EOI's argument in the Arbitration was consistent with its claims that Plaintiffs breached their personal contracts after leaving EOI. As noted, EOI's claims do not depend on Plaintiffs having misappropriated confidential information or having breached fiduciary duties while employed at EOI. Instead, EOI charges Plaintiffs in part with breaching their non-compete agreements, which prohibited them from using proprietary information that they learned while employed at EOI for their own benefit after leaving the company. *See* May 11, 2015, Letter to the Court from Gregory E. Stuhlman, Esquire in Response to Pls.' Apr. 28, 2015, Letter, at 3. As

B. *Are Plaintiffs Entitled to Fees on Fees?*

Through their second count, Plaintiffs seek to recover the expenses they incurred in connection with bringing their advancement claims. "[P]laintiffs who succeed in prosecuting a request for advancement . . . are entitled to receive fees on fees . . . and plaintiffs who are only partially successful . . . receive fees on fees reflecting the extent of their success . . . ."[45] Although Plaintiffs are not entitled to advancement, they argue that the Indemnification Agreements entitle them to fees-on-fees, regardless. Those agreements provide:

> In the event that any action is instituted by Indemnitee under this Agreement to enforce or interpret any of the terms hereof, Indemnitee shall be entitled to be paid all court costs and expenses, including reasonable attorneys' fees, incurred by Indemnitee with respect to such action, unless as a part of such action, the court of competent jurisdiction determines that each of the material assertions made by Indemnitee as a basis for such action were not made in good faith or were frivolous. . . .[46]

---

already explained, EOI's claims do not arise "by reason of the fact" that Plaintiffs were EOI employees.

[45] *Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *39 (Del. Ch. May 23, 2008).

[46] Indemnity Agmts. § 12.

Plaintiffs assert that "unless this Court were to find that each and every material assertion made by the Plaintiffs as a basis for this action was not made in good faith or was frivolous, Plaintiffs are entitled to the costs and expenses that they incurred in prosecuting this matter."[47]

Unfortunately for Plaintiffs, Delaware corporations lack the contractual power to compensate a party for fees and expenses incurred while pursuing a failed underlying claim.[48] Because that capacity is foreclosed by both statutory and common law, "[a] party must succeed (at least to some extent) on its underlying indemnification action to have a legally cognizable claim for monies expended in forcing its indemnitor to make it whole."[49] Because Plaintiffs are wholly unsuccessful on their request for advancement, they cannot recover the expenses they incurred in bringing this action.

---

[47] Compl. ¶ 56.

[48] *Levy*, 924 A.2d at 224-26.

[49] *Id.* While this is an advancement, rather than an indemnification, action, *Levy*'s logic applies with equal force.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is denied, and EOI's Motion for Summary Judgment is granted. Judgment is entered in favor of EOI and against Plaintiffs. The parties shall bear their own costs.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Register in Chancery-K