Paul S. LEVY, Jeffrey Lightcap, David Y. Ying and Anthony Grillo, Plaintiffs and Counterclaim Defendants,

Cleveland Christophe and Ray H. Witt, Plaintiffs,

v.

HLI OPERATING COMPANY, INC., Defendant, Counterclaim Plaintiff, Third–Party Plaintiff and Third–Party Counterclaim Defendant,

Joseph Littlejohn & Levy Fund II, L.P. and TSG Capital Fund II, L.P., Third–Party Defendants and Third–Party Counterclaim Plaintiffs.

C.A. No. 1395–VCL.

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 16, 2007.
Decided: May 16, 2007.

---

**122.** *See Union Illinois 1995 Inv. Ltd. Partnership v. Union Financial Group, Ltd.,* 847 A.2d 340 (Del.Ch.2004).

Joel Friedlander, Esquire, James G. McMillan, Esquire, Bouchard Margules & Friedlander, Wilmington, Delaware; Michael I. Allen, Esquire, Yoram J. Miller, Esquire, Jason C. Vigna, Esquire, Shapiro Forman Allen Sava & McPherson, New York, New York, Attorneys for Paul S. Levy, Jeffery Lightcap, David Y. Ying, Anthony Grillo, Cleveland Christophe, Ray H. Witt, and Joseph Littlejohn & Levy Fund II, L.P.

Rolin P. Bissell, Esquire, John J. Paschetto, Esquire, Michele Sherretta, Esquire, Young Conaway Stargatt & Taylor, Wilmington, Delaware, Attorneys for HLI Operating Company, Inc.

Daniel V. Folt, Esquire, Matt Neiderman, Esquire, Duane Morris, Wilmington, Delaware, Attorneys for TSG Capital Fund II, L.P.

### OPINION

LAMB, Vice Chancellor.

A Delaware corporation moves for partial summary judgment against several of its former outside directors in a suit brought by them to obtain indemnification for monies paid in settlement on their behalf by another entity, one which itself owed a concomitant contractual duty to indemnify losses resulting from their actions as directors. Since the directors suffered no actual loss as a result of the settlement and are therefore not real parties-in-interest, the appropriate cause of action on these facts is a claim for contribution against the corporation initiated by the entity which paid more than its equitable share of the amounts subject to indemnification. Additionally, the directors must reimburse the corporation for funds it advanced during this litigation because the contractual provision which purports to

grant them final indemnification for "fees on fees" (regardless of the success achieved on their underlying indemnification claims) is invalid under Delaware law. For these reasons, the court will grant the corporation's motion for partial summary judgment.

## I.

### A. *The Parties*

The plaintiffs in this action—Paul S. Levy, Jeffery Lightcap, David Y. Ying, Anthony Grillo, Cleveland Christophe, and Ray H. Witt—are former outside directors of HLI Operating Company, Inc. ("Old Hayes"). Four of the plaintiffs—Levy, Lightcap, Ying, and Grillo (the "JLL Representatives")—are also counterclaim defendants.

Old Hayes is the defendant, the counterclaim plaintiff, the third-party plaintiff, and the third-party counterclaim defendant in this matter. Before filing for bankruptcy in December 2001, Old Hayes was a publicly traded manufacturer of wheels and other auto parts. Joseph Littlejohn & Levy Fund II, L.P. ("JLL Fund") and TSG Capital Fund II, L.P. are the third-party defendants and the third-party counterclaim plaintiffs.

### B. *The Facts*

#### 1. *Turmoil At Old Hayes, Lawsuits, And The Plaintiffs' Indemnification Request* [1]

In late 2001, Old Hayes publicly announced its audit committee's conclusion that the company's reported financial results from 1999 to early 2001 were incorrect and would have to be restated. Following the announcement, Old Hayes stockholders filed lawsuits against the company, its executive officers, its outside directors, and certain other defendants, alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act and the regulations promulgated thereunder. Several months later, Old Hayes bondholders, also alleging various securities law violations, sued many of these same parties.

On December 15, 2001, Old Hayes filed for protection under chapter 11 of the United States Bankruptcy Code. The United States Bankruptcy Court for the District of Delaware approved the company's reorganization plan on May 12, 2003. Pursuant to the plan, Old Hayes became an operating subsidiary of a newly-created company, Hayes Lemmerz International, Inc. ("New Hayes").

On May 2, 2005, the parties in the aforementioned lawsuits, along with the insurance carriers that underwrote Old Hayes's director and officer insurance coverage, entered into settlement agreements. The insurers agreed with the defendants in those cases—a group that included, but was not limited to, the plaintiffs here—to contribute $20.3 million toward the settlement. The six plaintiffs in this action agreed to pay the remaining $7.2 million of the settlement amount. In connection with this payment, the plaintiffs sought indemnification from both Old Hayes and New Hayes pursuant to their indemnification rights under the Old Hayes bylaws, their personal indemnification agreements with Old Hayes, and their rights under section 11.7 of the reorganization plan.

Each of the plaintiffs, at the time he became an Old Hayes director, entered into an indemnification agreement with the company. Section 2(a) of those agreements provides:

---

1. Incorporated herein are facts more fully set forth in the court's April 5, 2006 opinion. *See*

*Levy v. Hayes Lemmerz Int'l, Inc.,* 2006 WL 985361, at *1–4 (Del.Ch. Apr. 5, 2006).

In the event Indemnitee was, is or becomes a party to or a witness or other participant in, or is threatened to be made a party to or witness or other participant in, a Claim by reason of (or arising in part out of) an Indemnifiable Event, the Company shall indemnify Indemnitee to the fullest extent permitted by law ... against any and all Expenses, judgments, fines, penalties and amounts paid in settlement (including all interest, assessments and other charges paid or payable in connection with or in respect of such Expenses, judgments, fines, penalties or amounts paid in settlement) of such Claim.... [2]

Old Hayes's bylaws also govern the company's indemnification obligations to the plaintiffs. Article VIII, section 1 of the bylaws provides:

[T]he Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director or officer of the Corporation ... against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation....

Finally, certain provisions of the reorganization plan seek to limit the plaintiffs' indemnification rights as those rights existed before Old Hayes filed for bankruptcy protection. Section 11.7 of the plan states:

(a) Except as specifically provided in Section 6.7 of the Plan, in satisfaction and compromise of the Indemnitee's Indemnification Rights, all Indemnification Rights except those held by (i) Persons included in either the definition of "Directors and Officers" or the "Insureds" in either of the policies providing the Debtors' D & O Insurance as of December 15, 2002 ... shall be released and discharged on and as of the Effective Date.

(b) On and after the Effective Date, the Indemnification Rights excepted from the release and discharge ... (ii) shall be limited to the coverage provided in the Debtors' D & O Insurance as of December 15, 2002 and any additional Insurance Coverage purchased pursuant to Section 11.7 plus an additional $10 million in the aggregate with respect to the directors of [Old Hayes] who serve on the executive committee of [Old Hayes's] board of directors serving in such capacity after June 6, 2002 ... and the Reorganized Debtors shall not be liable to make any payments beyond the additional $10 million in excess of any such coverage actually paid by the D & O Insurance or the Insurance Coverage to or for the benefit of any such Indem-

---

**2.** Section 1(b) defines a "Claim" as "any threatened, pending or completed action, suit or proceeding, or any inquiry or investigation, whether instituted by the Company or any other party, that Indemnitee in good faith believes might lead to the institution of any such action, suit or proceeding, whether civil, criminal, administrative, investigative or other."

Section 1(d) defines an "Indemnifiable Event" as "any event or occurrence related to the fact that Indemnitee is or was a director ... of the Company ... or by reason of anything done or not done by Indemnitee in any such capacity."

nitee.... [3]

On May 26, 2005, Old Hayes and New Hayes board members informed the plaintiffs that indemnification of any sort would not be forthcoming. In response, the plaintiffs filed this lawsuit.

### 2. *The Court's Opinion On The Motions To Dismiss*

On October 12, 2005, Old Hayes and New Hayes moved to dismiss the plaintiffs' amended complaint under Court of Chancery Rule 12(b)(6). In an April 5, 2006 opinion, the court dismissed the plaintiffs' claims as to New Hayes, holding that section 11.7 of the reorganization plan did not assign Old Hayes's indemnification liabilities to New Hayes.[4] However, the court allowed the plaintiffs to proceed against Old Hayes, rejecting the company's argument that the indemnification agreements required that the plaintiffs make a written demand on the board of directors before initiating an indemnification suit,[5] as well as its contention that a pending SEC investigation precluded the plaintiffs from seeking immediate indemnification of amounts paid in settlement of the securities class actions.[6]

### 3. *Discovery Reveals JLL Fund's Payment Of The JLL Representatives' Share Of The Settlement*

Prior to Old Hayes's bankruptcy, JLL Fund held approximately 34% of the company's stock. Pursuant to a stockholder agreement governing relations between several of the investors in Old Hayes, JLL Fund designated the JLL Representatives to four of the eleven directorships on the company's board.[7] Moreover, under the relevant provision of JLL Fund's limited partnership agreement, each of the JLL Representatives enjoyed broad indemnification rights for actions taken on behalf of the partnership.[8]

---

**3.** Section 1.121 of the plan defines "Indemnification Rights" as "any obligations or rights of the Debtors to indemnify, reimburse, advance or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to the Debtors' certificate of incorporation, bylaws, or policy of providing employee indemnification, or other applicable law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for or on behalf of the Debtors."

Section 1.122 of the plan defines "Indemnitee[s]" as "all present and former directors, officers, employees, agents or representatives of the Debtors who are entitled to assert Indemnification Rights."

**4.** *Levy,* 2006 WL 985361, at *5–6.

**5.** *Id.* at *6–8.

**6.** *Id.* at *10–12.

**7.** Each of the JLL Representatives has had, or currently has, significant ties to JLL Fund and its affiliates. Levy has been a senior managing director of Joseph Littlejohn & Levy since its inception in 1988. JLL is the managing partner of JLL Fund. At various points in time from January 1999 until April 2003, Lightcap, Grillo, and Ying all served as senior managing directors of JLL. Furthermore, Levy, Lightcap, and Ying were all general partners of JLL Associates II, L.P., a general partner of JLL Fund.

**8.** Section 10.1 of that agreement provides:

[JLL Fund] shall, to the fullest extent permitted by applicable law, indemnify and hold harmless each [JLL Representative] against all claims, liabilities and expenses of whatever nature ... relating to activities undertaken in connection with [JLL Fund], including, but not limited to, amounts paid in satisfaction of judgments, in compromise or as fines and penalties, and counsel fees and expenses ... reasonably incurred in connection with the defense or disposition of any action, suit or other proceeding ... whether civil or criminal, before any court or administrative body in which [the JLL Representative] may be or may have been involved as a party or otherwise or with which [the JLL Representative] may be or may have been threatened....

Although the plaintiffs alleged in the amended complaint that they personally paid a total of $7.2 million towards the class action settlement, discovery undermined this assertion. Document production and interrogatory responses revealed that JLL Fund, apparently pursuant to its indemnification obligations under section 10.1 of the limited partnership agreement, contributed $4.8 million of the settlement amount, or $1.2 million on behalf of each JLL Representative. However, the other two plaintiffs, Christophe and Witt, did pay the remaining $2.4 million out of their own pockets.

### 4. *Old Hayes Stops Advancing Litigation Expenses*

From the beginning of this litigation until August 17, 2006, Old Hayes advanced the attorneys' fees and costs associated with the plaintiffs' pursuit of this indemnification action, subject to a right of recoupment if the court ultimately entered judgment in favor of Old Hayes. These expenses were advanced pursuant to section 4 of the plaintiffs' indemnification agreements, which provides:

The Company shall indemnify Indemnitee against any and all expenses (including attorneys' fees) and, if requested by Indemnitee, shall (within two business days of such request) advance such expenses to Indemnitee, which are incurred by Indemnitee in connection with any action brought by Indemnitee for (i) indemnification or advance payment of Expenses by the Company under this Agreement or any other agreement or Charter or By-law provision now or hereafter in effect relating to Claims for Indemnifiable Events and/or (ii) recovery under any directors' liability insurance policies maintained by the Company, regardless of whether Indemnitee ultimately is determined to be entitled to such indemnification, advance expense

payment or insurance recovery, as the case may be.

On August 17, 2006, shortly after discovering the aforementioned facts relating to JLL Fund's payment of $4.8 million of the settlement amount on behalf of the JLL Representatives, Old Hayes ceased complying with the plaintiffs' demands for advancement.

### 5. *The Present Procedural Posture Of This Litigation*

On September 7, 2006, Old Hayes filed a motion for summary judgment against the JLL Representatives. Old Hayes seeks an order declaring that it is not required to indemnify the JLL Representatives for the $4.8 million which JLL Fund paid on their behalf to settle the class action lawsuits. Furthermore, Old Hayes asks the court to hold the JLL Representatives liable for any fees or legal expenses previously advanced to them for prosecution of this action, and simultaneously requests a declaration that it is not obligated to advance such expenses to the JLL Representatives or JLL Fund at any point in the future.

On November 8, 2006, the JLL Representatives filed a cross-motion for summary judgment against Old Hayes. In that motion, the JLL Representatives seek a declaration holding Old Hayes liable for all attorneys' fees and expenses incurred in their prosecution of this action and in defense of any counterclaims asserted by Old Hayes.

The parties' motions were fully briefed, and the court held oral argument on January 10, 2007. At oral argument, the court granted leave to the plaintiffs and JLL Fund to amend their pleadings pursuant to Court of Chancery Rule 15(aaa). On January 24, 2007, JLL Fund amended its pleading to add third-party counterclaims against Old Hayes for contribution and

indemnification arising out of JLL Fund's $4.8 million settlement payment. At the court's behest, the parties made simultaneous submissions on February 16, 2007 outlining the issues they believe are ripe for decision following JLL Fund's amendment.

## II.

Old Hayes argues that based on the plain language of the indemnification agreements and the company's bylaws, the JLL Representatives are only entitled to indemnification for "amounts paid in settlement" out of their own pockets. Since JLL Fund, not the JLL Representatives, actually paid the settlement amounts, Old Hayes says the individuals have no contractual right to indemnification from it. Moreover, the company says 8 *Del. C.* § 145(a) compels a similar result. The statute, according to Old Hayes, provides that mandatory indemnification rights only attach if settlement payments are "incurred by the person," and since the JLL Representatives did not actually incur a loss, section 145(a) prevents them from recovering any payments made by JLL Fund.

Old Hayes posits that under a proper reading of *Chamison v. HealthTrust, Inc.,*[9] JLL Fund may bring a claim against Old Hayes for equitable contribution. According to the company, however, *Chamison* does not recognize an indemnification claim for the personal benefit of the JLL Representatives for amounts JLL Fund paid on their behalf. Thus, summary judgment should be entered against the JLL Representatives.

Old Hayes's success on its first argument is a necessary foundation to assert its second. Old Hayes maintains that because the JLL Representatives never had a viable claim for indemnification, they are required to reimburse the company for all the attorneys' fees and expenses advanced to them during this litigation. This result, Old Hayes believes, is consistent with principles of both Delaware statutory and common law. In the company's view, fees on fees jurisprudence in Delaware generally teaches that a party who initiates litigation to enforce a right to indemnification or advancement should only receive reimbursement for the costs of the litigation on a level commensurate with the party's relative success in the lawsuit. Additionally, Old Hayes says that since section 145(e) requires repayment of advanced expenses by an individual who is ultimately not entitled to indemnification, the agreements here should be implicitly subject to such a proviso. In sum, because the JLL Representatives' indemnification claims are meritless, Old Hayes argues that it is accordingly entitled to reimbursement and to a declaratory judgment foreclosing any future advancement to either the JLL Representatives or JLL Fund.

Finally, Old Hayes asks that the court award it fees for prosecuting its present motion. Old Hayes says that the JLL Representatives' decision to pursue such a claim was a tactical choice designed to allow JLL Fund to improperly piggyback on the JLL Representatives' rights to advancement under section 4 of their indemnification agreements. Absent the JLL Representatives' purposeful concealment of the underlying facts as to who actually paid the settlement amounts, Old Hayes would never have had to bring this motion. Thus, in the company's view, a fee award in its favor is warranted.

In opposition to Old Hayes's motion, the JLL Representatives argue that the company misreads *Chamison.* According to

---

**9.** 735 A.2d 912, 918 (Del.Ch.1999), *aff'd,* 748 A.2d 407 (Del.2000).

the JLL Representatives, *Chamison* holds that when one indemnitor-corporation fulfills an indemnification obligation to an indemnitee-director who enjoys multiple sources of indemnification, the paying corporation becomes equitably subrogated to the contractual rights of the director and may bring a claim against the holdout corporation in the director's name. The JLL Representatives say the present situation is a carbon copy of the factual scenario in *Chamison*, and JLL Fund should therefore be allowed to stand in their shoes to maintain this suit. They also argue that a contrary ruling here would perversely encourage indemnitor-corporations, in hopes of avoiding indemnification obligations, to adopt a "wait-and-see" attitude when a rightful indemnitee has multiple sources of payment.

The JLL Representatives also oppose Old Hayes's request for attorneys' fees. Given the uncertainty in the pleading standards and the types of claims countenanced by *Chamison*, the JLL Representatives say they have pursued this indemnification action against Old Hayes in nothing but good faith.

In support of their own motion for partial summary judgment, the JLL Representatives focus on section 4 of their indemnification agreements. Specifically, they argue that section 4 obligates Old Hayes to pay their litigation expenses in this action regardless of their level of success or whether they ultimately prevail on their indemnification claims. Thus, the JLL Representatives ask the court to en-

ter an order holding Old Hayes liable for all past, present, and future costs and expenses incurred in their suit.

## III.

The parties' cross-motions for summary judgment are governed by the familiar benchmark of Court of Chancery Rule 56. To prevail on a particular claim under this standard, the moving party must demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.[10] The court must view the evidence presented in the light most favorable to the nonmoving party, and the moving party bears the burden of demonstrating the absence of a material factual dispute.[11] The party opposing summary judgment, however, "may not rest upon the mere allegations or denials [contained in its pleadings]."[12] Instead, it must offer, by affidavit or other admissible evidence, "specific facts showing that there is a genuine issue for trial."[13] If the record indicates that such an issue exists or "if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances," summary judgment will be denied.[14]

## IV.

A. *JLL Fund's Claim For Equitable Contribution*

1. *Distinguishing Between Indemnification, Contribution, And Subrogation*

Before clarifying the type of claim that may be properly asserted when two sec-

**10.** Court of Chancery Rule 56(c). *See also Williams v. Geier*, 671 A.2d 1368, 1375 (Del. 1996).

**11.** *O'Neill v. Town of Middletown*, 2007 WL 1114019, at *5 (Del.Ch. Mar. 29, 2007) (citing *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del.1977)).

**12.** Court of Chancery Rule 56(e).

**13.** *Id.*

**14.** *O'Neill*, 2007 WL 1114019, at *5 (quoting *Lillis v. AT & T Corp.*, 2006 WL 3860915, at *1 (Del.Ch. Dec. 21, 2006))(citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del.1962)).

tion 145 indemnitors agree to indemnify the same person for the same activity and the same risk but only one satisfies its obligation, it is useful to explain the important differences between three nuanced causes of action often used interchangeably, and thus incorrectly, by courts and litigants: indemnification, contribution, and subrogation.[15]

### a. Contribution

■ An equitable right of contribution arises when one of several obligors liable on a common debt discharges all, or greater than its share, of the joint obligation for the benefit of all the obligors.[16] To succeed on a contribution claim, a party must show concurrent obligations existed to the same entities, and that the obligors essentially insured the same interests and the same risks.[17]

■ In the insurance context, which is strongly analogous to the situation the court faces here,[18] contribution exists only among the insurers, and only absent a contractual understanding between the insurers as to how liability on the common debt is to be divided.[19] As such, the right of contribution "has no place between insurer and insured, which have contracted with each other."[20] In contrast to the rights of subrogation and indemnity, contribution will not relieve an obligor from the entire burden of a loss, but only from its equitable share.[21] Clearly, then, the right of contribution is not equivalent to an insurer "standing in the shoes" of the insured.[22]

### b. Subrogation

■ In an action for subrogation, the insurer does stand in those shoes and may demand full payment from another party primarily responsible for the loss which the insurer both insured and reimbursed.[23] To succeed on a claim for subrogation, the

**15.** *Home Ins. Co. v. Cincinnati Ins. Co.,* 213 Ill.2d 307, 290 Ill.Dec. 218, 821 N.E.2d 269, 276 (2004) (citing 15 COUCH ON INSURANCE § 217:5 (3d 2004)).

**16.** COUCH at § 217:4.

**17.** *Home Ins.,* 290 Ill.Dec. 218, 821 N.E.2d at 276 (citing COUCH at § 217:3). *See also Diamond State Tel. Co. v. Univ. of Del.,* 269 A.2d 52, 55 (Del.1970) (noting that for a party to assert a claim under the Uniform Joint Tortfeasor's Contribution Act, joint tortfeasors must be liable to the same person).

**18.** *See Chamison,* 735 A.2d at 925–26 (drawing on "conventional insurance law" in discussing a right of contribution in the context of section 145).

**19.** COUCH at § 217:4.

**20.** *Id.* at § 217:5.

**21.** *Home Ins.,* 290 Ill.Dec. 218, 821 N.E.2d at 276 (citing COUCH at § 217:5).

**22.** COUCH at § 217:5 n. 38 (citing *Truck Ins. Exchange v. Superior Court (Transco Syndicate*

*No. 1),* 60 Cal.App.4th 342, 70 Cal.Rptr.2d 255 (1997)).

**23.** *See, e.g., Bell Atlantic–Delaware, Inc. v. Saporito,* 875 A.2d 620, 623 (Del.2005) (noting that in Delaware, "the term 'subrogation' retains its common law meaning, subject to statutory exceptions") (citing *Waters v. United States,* 787 A.2d 71, 73 (Del.2001)); *Duncan Regional Hosptial, Inc. v. Nettles,* 2004 WL 1334732, at *7 (W.D.Okla. May 24, 2004) (citing *U.S. Fidelity & Guar. Co. v. Federated Rural Elec. Ins. Corp.,* 37 P.3d 828, 831–32 (Okla.2001) (stating that "a claim based on equitable subrogation allows an insurer who has paid coverage to stand in the shoes of the insured and pursue recovery from a third party primarily responsible for the insured's loss which the insurer both insured and reimbursed" and that the "right of contribution is not derivative of the rights of the insured, but belongs to each insurer independently to seek reimbursement from a co-insurer those sums which were paid in excess of an insurer's proportionate share of the common obligation")).

subrogee must show that the defendant is primarily responsible for the subrogor's loss, that it is secondarily liable for the loss, and that by discharging its own liability to the subrogor, it simultaneously extinguished all of the defendant's liability to the subrogor.[24]

 Subrogation differs from contribution because its operation rests on concepts of primary and secondary liability among obligors.[25] Thus, it acts to place an entire loss, not just a portion, on another party.[26] In contrast to indemnification, subrogation allows an insurer to succeed to a right of payment flowing to its insured, while an entity seeking indemnity must do so in its own right.[27]

### c. Indemnification

 Like subrogation, indemnification differs from contribution because it places the entire burden of a loss upon the party ultimately liable or responsible for it, and by whom the loss should have been discharged initially.[28] Finally, the "remedies of contribution and indemnity are mutually exclusive," with contribution prohibited where a party has a right to indemnity, and vice-versa.[29]

### 2. Clarifying Chamison

### a. What Claim Must Be Brought?

As in the case at bar, the named plaintiff in *Chamison*, a former outside director of the corporate defendant, enjoyed fullest-extent-of-the-law indemnification rights under two separate contracts—one with the corporation and one with the stockholder responsible for his election to the board.[30] Following a derivative suit where claims against the named plaintiff were dismissed with prejudice and after the corporate defendant refused to pay any of the named plaintiff's litigation costs, the stockholder fully reimbursed the named plaintiff for all costs associated with the derivative suit.[31] The named plaintiff then brought an action against the corporate defendant.[32]

As an initial matter, the court in *Chamison* characterized the named plaintiff's two asserted causes of action as, first, a claim for complete indemnification of his litigation expenses and, alternatively, a contribution claim for half of those expenses.[33] Later in the opinion, however, the court analyzed both of these claims from the perspective of the stockholder, rather than the named plaintiff.[34] In doing so, the

24. *Home Ins.*, 290 Ill.Dec. 218, 821 N.E.2d at 280.

25. *Id.* 290 Ill.Dec. 218, 821 N.E.2d at 276 (citing COUCH at § 217:5).

26. *Id.*

27. *Id.*

28. *Id. See also Quereguan v. New Castle County*, 2006 WL 2522214, at *5 (Del.Ch. Aug. 18, 2006) ("A key difference between 'common law indemnification,' which is defined as a general right of reimbursement for debts owed to third parties by the [indemnitor] as a secondarily liable party, and 'contractual indemnification' is that common law indemnification involves the responsibility to pay for another's liability."); *Lee v. Brenton Eng'g*

*Co.*, 2001 WL 1482358, at *2 (Del.Super. Oct. 30, 2001) (noting that common law indemnification in Delaware, much like subrogation, is premised on notions of primary and secondary liability).

29. *Id.* (citing 18 C.J.S. CONTRIBUTION § 26, at 30 (1990)).

30. 735 A.2d at 914–916.

31. *Id.* at 916–17.

32. *Id.* at 917.

33. *Id.*

34. *Id.* at 924–26.

court first held, in effect, that an indemnitor who fully satisfies its obligations to the party it indemnifies under section 145 *may not afterwards bring an action for indemnification against its co-indemnitor wherein it seeks to completely shift the "entire burden" of the amounts it has paid.*[35] Noting that the Delaware legislature "created no primary-secondary hierarchy among [section] 145 indemnitors," the court decided the necessary starting point for analyzing such a situation is a presumption that both indemnitors are equally liable for any indemnifiable amounts.[36]

This determination logically and naturally segues into the *Chamison* court's second conclusion—that an indemnitor's cause of action against a co-indemnitor in this factual scenario is one for contribution.[37] The court stated:

> As a general rule, in the absence of contractual language to the contrary, two insurers who insure the same person for the same risk must share the loss. If one insurer pays the full amount of a claim, it may seek contribution of one half from the other. To seek contribution from another insurer, the one seeking contribution must show that the other insurer's liability is concurrent, benefits the same insured, and insures the same risk. If the insurers share these qualities and if one insurer pays more than its share, that insurer may seek contribution from the other insurer. . . . [H]aving decided that [these factors are present], it follows . . . that

there ought to be an implied right of contribution among the co-indemnitors in this situation.[38]

■ Thus, *Chamison* instructs that when an indemnitor, pursuant to section 145, fully satisfies a joint indemnification obligation it shares with a co-indemnitor covering the same indemnitee and the same challenged activity, the indemnitor must sue the co-indemnitor on a theory of contribution. The facts presented here fit squarely within this framework, and proper resolution of this case, then, also rests on contribution.

b. *What Party Must Bring The Claim?*

■ Having clarified what type of claim may properly be brought on these facts, this court turns now to why the co-indemnitor, not the indemnitee, is the appropriate party to bring suit. When a purported indemnitee has all of his indemnifiable expenses paid in full and cannot show an out-of-pocket loss, he has no claim for indemnification under section 145. The relevant provisions of that statute empower a corporation to provide indemnification of only those amounts "actually . . . incurred by the person. . . ."[39] This language is best understood as a statutory embodiment of the common law of indemnification, which generally recognizes that a party who " 'has not and will not sustain any actual out-of-pocket loss' as the result of a claim raised against it has no indemnifica-

35. *Id.* at 924 (emphasis added).

36. *Id.* at 924–25 (noting that the legislative silence on the issue "makes it impossible to choose the more obligated indemnitor of two contractually obligated indemnitors" and that the corporate defendant and the stockholder, "as voluntary, contractual indemnitors . . . were equally responsible for the [named plaintiff's indemnifiable expenses]").

37. *Id.* at 926 ("Therefore, I conclude that a right of contribution among [section] 145 co-indemnitors exists under Delaware law and ought to be recognized. . . .").

38. *Id.* at 925–26 (internal citations omitted).

39. 8 *Del. C.* §§ 145(a)-(c).

tion claim...."[40] Therefore, under this reading of section 145, once a co-indemnitor fully reimburses its indemnitee for indemnifiable liabilities, the indemnitee lacks standing to assert an indemnification claim against the other indemnitor in the indemnitee's own right.

While the *Chamison* court opined that a section 145 indemnitor who has fully satisfied its obligation to its indemnitee effectively becomes subrogated to, and thus may maintain a cause of action in the name of, its indemnitee,[41] the logic supporting this conclusion is no longer persuasive. First, allowing the indemnitor to proceed in subrogation is, by definition, inconsistent with the *Chamison* court's holding that contribution is the correct theory of recovery in this type of fact pattern. As discussed above, subrogation necessarily contemplates full recovery by the party invoking it, as well as a primary-secondary ordering of liability between the indemnitors. Both of these concepts are inimical to the claim for contribution which *Chamison* sanctions.

■ Second, allowing a section 145 indemnitor to proceed in the name of its indemnitee does not vindicate any cognizable public policy. As the *Chamison* court itself noted, the underlying purpose of allowing an insurer to proceed at law in its insured's name is to shield the presence of an insurance company from the jury.[42] This purpose is absent in this court, where there is no jury. Moreover, any apprehension about inconsistencies with Superior Court practice is misplaced, since the Delaware legislature has conferred exclusive jurisdiction on the Court of Chancery over actions implicating or concerning corporate indemnification obligations under section 145.[43] The more pressing policy consideration, in this court's view, is that the time and resources of litigants and the judiciary will be wasted—as has happened here—wading through murky pleadings wherein the true facts surrounding payment of the indemnitee's liabilities are obscured unnecessarily until discovery.[44]

■ Finally, requiring an indemnitor to initiate a contribution suit in its own name against a co-indemnitor will not cause a corporation to shirk its indemnification responsibilities. The *Chamison*

40. *Perno v. For–Med Medical Group, P.C.*, 176 Misc.2d 655, 673 N.Y.S.2d 849, 851 (N.Y.Sup. Ct.1998). *See also Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal.App.4th 468, 14 Cal.Rptr.3d 302, 306 (2004) (holding that where an insured party fully recovered losses from an insurer, the insured party could not bring an indemnification action against a party which owed it contractual indemnification obligations). *See Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1090 (Del.1995) ("Courts have also held that legislative intent to change the common law must be clearly expressed, not implied....").

41. 735 A.2d at 918.

42. *Id.* (citing *Clark II v. Simon*, 1992 WL 354098, at *3 (Del.Super. Nov. 9, 1992) (noting that the issue of bringing an action in the name of an insurer is irrelevant when a jury is not involved)).

43. 8 *Del. C.* § 145(k) ("The Court of Chancery is hereby vested with exclusive jurisdiction to hear and determine all actions for advancement of expenses or indemnification brought under this section or under any bylaw, agreement, vote of stockholders or disinterested directors, or otherwise."). While section 145(k) does not specifically speak to contribution actions brought by a co-indemnitor, the fact that such an action is singularly predicated on concurrent indemnification obligations existing in the first instance likely means the legislature intended for the Court of Chancery to have exclusive jurisdiction over these types of contribution suits as well.

44. One need only reexamine the parties' myriad roles in Part I(A) to see how unnecessarily complex a run-of-the-mill suit for contribution has become.

opinion stands for the proposition that regardless of whether an indemnitee (to enforce his own indemnification rights) or an indemnitor (to enforce an equitable right of contribution) is forced to seek judicial relief, the Court of Chancery will freely saddle a co-indemnitor who "unreasonabl[y] refus[es] to acknowledge its contractual obligation to [its indemnitee]" with the costs and fees associated with the enforcement suit.[45] Fee awards of this sort are consistent with fees on fees jurisprudence, and curtail any potential "perverse economic incentives" for an indemnitor to ignore its responsibilities.[46]

### 3. Distilling The Claims In This Case

■■■■■ As the facts here make clear, JLL Fund and Old Hayes each possessed a fullest-extent-of-the-law contractual commitment to indemnify the JLL Representatives for the same conduct—their actions as directors of Old Hayes. JLL Fund paid $4.8 million into the securities lawsuit settlement on behalf of the JLL Representatives, and thus discharged both its own indemnification obligations as well as those of Old Hayes. As the real party-in-interest, JLL Fund has a claim for equitable contribution to force Old Hayes to pay its fair share of the settlement amount.[47] If the court ultimately determines after trial that Old Hayes acted unreasonably in refusing to satisfy its indemnification obligations, it is subject, under *Chamison,* to an award of costs and attorneys' fees against it. The indemnification claims brought by the JLL Representatives, however, must fail, and Old Hayes is entitled to summary judgment on those counts.

### B. The Challenged Language In Section 4 Of The Indemnification Agreements Is Invalid

■■■ Since the JLL Representatives' suit for indemnification fails under *Chamison,* the court now turns to whether section 4 of their indemnification agreements allows the JLL Representatives to retain the fees and expenses Old Hayes advanced to them while litigating their unsuccessful claims.[48] Although a Delaware court has

---

45. 735 A.2d at 927.

46. *Id.* at 927 n. 57 (citing *Pike Creek Chiropractic v. Robinson,* 637 A.2d 418, 422–23 (Del.1994) (holding that an indemnitee is entitled to recover its costs and attorneys' fees incurred in enforcing a right to indemnification)).

47. As to JLL Fund's contribution claim, Old Hayes will still be able to assert its fact-intensive defenses at trial—i.e., that the settlement payment was unreasonable and that it benefitted individuals to whom Old Hayes owed no contractual duties—since these defenses may be relevant to apportioning how much of the settlement Old Hayes ought to equitably shoulder. The court also expects Old Hayes to move for summary judgment on JLL Fund's common law indemnification claim, which it pled in the alternative to its contribution claim. As discussed above, common law indemnification and equitable contribution are mutually exclusive remedies, with JLL Fund's relief here being properly predicated on the latter. *See* note 28 *supra.*

48. At oral argument, Old Hayes offered a strained interpretation of section 4, arguing that the provision only applies to expenses incurred by an indemnitee in the prosecution of a suit wherein the indemnitee attempts to recover legal expenses and fees suffered in defense of a lawsuit. Old Hayes maintains that section 4 does not apply—and thus the company is not obligated to advance an indemnitee's legal costs—when the indemnitee seeks to recover amounts spent in settlement of a lawsuit. However, Old Hayes failed to provide any conceivable basis as to why the parties might intentionally choose to draw such a seemingly arbitrary distinction, and, as such, the defendant's interpretation of section 4 is untenable. Viewed in context, section 4 is best seen as providing an indemnitee with a right of advancement to legal expenses incurred in *an offensive suit against Old Hayes* (as well as an unconditional right to not have

never squarely addressed the contractual power of a corporation to compensate a party for fees and expenses incurred while prosecuting an underlying indemnification claim "regardless of whether [the party] is ultimately determined to be entitled to [i]ndemnification," [49] relevant precedent, as well as the statutory framework of section 145, strongly suggest that such a provision is void.

In *Stifel Financial Corp. v. Cochran,* the Delaware Supreme Court held that "indemnification for expenses incurred in successfully prosecuting an indemnification suit are permissible under [section] 145(a), and therefore 'authorized by law.' " [50] Justice Walsh reasoned that section 145(a) necessarily contemplates a fees on fees award because the defendant-corporation, by forcing the plaintiff to litigate its right to indemnification, was responsible for the plaintiff incurring fees in the first place.[51]

Shortly after the Supreme Court's decision, this court logically extrapolated *Cochran's* linchpin—that a party's right to fees on fees hinges upon its success in the underlying indemnification action—in *Fasciana v. Electronic Data Systems Corp.*[52] *Fasciana* instructs that a litigant's partial success in an indemnification action leads to partial indemnification of the litigant's fees "commensurate with the extent of the victory." [53] Drawing on analogous federal and Delaware common law, Vice Chancellor Strine reasoned that conditioning fees on fees with a success and proportionality requirement "encourages parties seeking advancement or indemnification to raise only substantial claims and encourages corporations to compromise worthy claims (lest they suffer a fees on fees award) and resist less meritorious claims (knowing that success will bar a fees on fees recovery for the plaintiff)." [54]

Importantly, the provisions at issue in both *Cochran* and *Fasciana* required indemnification to the fullest extent authorized by Delaware law.[55] A contractual agreement for indemnification of fees on fees, then, cannot overstep this bright-line legal boundary. A party must succeed (at least to some extent) on its underlying indemnification action to have a legally

those advanced expenses clawed back) to enforce the indemnitee's contractual rights to any indemnifiable amount whatsoever.

49. In *Kaung v. Cole Nat'l Corp.,* 2005 WL 3462250 (Del.Ch. Dec. 13, 2005), the court addressed a provision similar to the one found here in section 4. That clause obligated the corporation "to pay for all reasonably incurred expenses regardless of the outcome of the litigation." *Id.* at *3. *Kaung* is not dispositive, however, because the court found the obligation was conditional and the required condition was not met. *Id.* In contrast, section 4 is unconditional.

50. 809 A.2d 555, 561 (Del.2002).

51. *See id.* (also noting that "without an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete" and that allowing a fees on fees award "prevents a corporation from using its 'deep pockets' to wear down a former director, with a valid claim to indemnification, through expensive litigation").

52. 829 A.2d 178, 184 (Del.Ch.2003) ("*Cochran* provides only a starting point, by conditioning the right to fees on fees on success."). The underlying action in *Fasciana* was an advancement suit, but its teachings apply with equal weight when the primary suit is one for indemnification. *See, e.g., Kaung,* 2005 WL 3462250, at *3 (applying the holding in *Fasciana* in an indemnification context).

53. *Kaung,* 2005 WL 3462250, at *3. *See also Fasciana,* 829 A.2d at 184 ("[The indemnitee] should only be entitled to an indemnification of those expenses reasonably proportionate to the level of success he achieved.").

54. *Fasciana,* 829 A.2d at 184.

55. *Cochran,* 809 A.2d at 557; *Fasciana,* 829 A.2d at 182.

cognizable claim for monies expended in forcing its indemnitor to make it whole. Because a Delaware corporation cannot take actions which our law does not countenance, a contract provision which mandates indemnification for fees on fees in unsuccessful litigation is invalid since it flouts the lucid precepts of *Cochran* and *Fasciana.*

The statutory framework of section 145 implicitly requires the same result. Section 145(e) provides that expenses incurred in defending a suit may be advanced by the corporation "upon receipt of any undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation...."[56] Thus, if a director does not promise to repay advanced expenses in the event he is unsuccessful, the corpora-

tion is statutorily barred from making any advancement.[57] The legislature could not have enacted such a provision and simultaneously intended that a corporation could contractually provide final reimbursement for such expenses regardless of the director's ultimate right to indemnification.[58] Instead, section 145(e), consistent with the holdings in *Cochran* and *Fasciana,* is best read as limiting a corporation's power to indemnify fees on fees to those situations where success is achieved on the underlying claim.[59]

■ Finally, allowing a contractual provision such as the one in section 4 to stand contravenes notions of sound public policy previously noted by this court. The law should not encourage directors and officers to bring non-meritorious indemnification claims against the corporation, and the provision at issue here clearly creates

---

**56.** 8 *Del. C.* § 145(e).

**57.** Donald J. Wolfe, Jr. & Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery § 8–2[b], at 8–17 n. 29 (2005).

**58.** *See id.* at 8–18 ("Regardless of whether a person has executed an undertaking, a corporation is entitled to recover amounts advanced to persons who ultimately are found not to be entitled to indemnification.") (citing *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *8 (Del.Ch. June 18, 2002)). *See also Citadel Holding Corp. v. Roven*, 603 A.2d 818, 823 (Del.1992) ("Private parties may not circumvent the legislative will simply by agreeing to do so.").

**59.** The court does not construe section 145(f) as being inconsistent with this approach. "Under [section] 145(f), a corporation may provide indemnification rights that go 'beyond' the rights provided by ... the other substantive subsections of [section] 145. At the same time, such indemnification rights provided by a corporation must be 'consistent with' the substantive provisions of [section] 145...." *Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87, 91 (2d Cir.1996). *See also*

*Cochran v. Stifel Fin. Corp.*, 2000 WL 286722, at *18 (Del.Ch. Mar. 8, 2000), *rev'd on other grounds*, 809 A.2d 555 (Del.2002) (quoting E. Norman Veasey et al., Delaware Supports Directors with a Three-Legged Stool of Limited Liability, Indemnification, and Insurance, 42 Bus. Law. 399, 415 (1987)) ("'[Section] 145(f) suggests that a corporation's decision to provide broader indemnification rights should not be disturbed unless those broader rights are 'contrary to the limitations or prohibitions set forth in the other section 145 subsections, or other statutes, court decisions or public policy....'"). Indeed, section 145(f) cannot be interpreted to eviscerate section 145(e), as doing so would violate well-established rules of statutory construction. *See Coastal Barge Corp. v. Coastal Zone Indus.*, 492 A.2d 1242, 1245 (Del.1985) ("A statute is passed by the General Assembly as a whole and not in parts or sections. Consequently, each part or section should be read in light of every other part or section to produce a harmonious whole."); *Copeland v. Dixie Const. Co.*, 216 Ala. 257, 113 So. 82, 83 (1927) ("In the enactment of statutes a Legislature will not be presumed to have intended to contradict itself, and two statutes contemporaneously enacted will be construed as consistent with each other, if such a construction be reasonably possible.").

a perverse incentive to do so. As discussed in *Fasciana:*

> [T]he public policy underlying the advancement and indemnification provisions of [section] 145 is an important one. By enacting [section] 145, our General Assembly helped ensure that capable persons would be willing to serve as directors, officers, employees, and agents of Delaware corporations. *But those indemnification and advancement provisions are not a blank check for corporate officials. The costs of indemnification are borne by corporations and ultimately by their stockholders.* [An indemnitee's right to be indemnified for fees on fees to the extent he is] unsuccessful does not outweigh the right of [the corporation's] stockholders to resist having to bankroll that part of [the indemnitee's] claim that [the corporation] was correct to oppose.[60]

For these reasons, the provision found in section 4 of the indemnification agreements which purports to require Old Hayes to indemnify the plaintiffs for fees and expenses incurred in this action regardless of their success on the merits is invalid.[61] Old Hayes is entitled to recover the pro rata portion of fees and expenses it advanced on behalf of the JLL Representatives (⅝ths) because the JLL Representatives achieved no success on their underlying indemnification claims.[62] Any fees and expenses advanced to Christophe and Witt are subject, in an inverse proportion to the level of success they ultimately achieve in this case, to a right of recovery by Old Hayes. Based on this opinion, only Witt and Christophe have continuing valid claims for advancement under section 4 of the indemnification agreements.

## V.

For the foregoing reasons, the defendant's motion for partial summary judgment is GRANTED and the JLL Representatives' motion for partial summary judgment is DENIED. The parties will bear their own costs related to these motions.[63] IT IS SO ORDERED.

60. 829 A.2d at 186 (emphasis added) (internal citations omitted).

61. Thus, section 4 must be read as though "regardless of whether Indemnitee ultimately is entitled to such indemnification, advance expense payment or insurance recovery" did not exist. This is consistent with the severability provision found in section 15 of the indemnification agreements.

62. In the past, this court has held purported co-indemnitees who retained joint counsel responsible for their pro rata share of advanced fees and litigation costs. This bright-line rule comports with general notions of equity and prevents the court from having to engage in a time-consuming supplemental hearing to precisely allocate expenses amongst the individuals by examining attorneys' time sheets. *Valeant Pharm. Int'l v. Jerney,* 921 A.2d 732, 753–54 (Del.Ch.2007).

63. The court expressly finds that JLL Fund's and the plaintiffs' positions and pleadings, due in large part to the haziness surrounding the pleading requirements espoused in *Chamison,* do not merit any reordering or reassignment of the costs of the present motions under *Lillis v. AT & T Corp.,* 896 A.2d 871 (Del.Ch.2005).